# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

SWANDA BROTHERS, INC., an Oklahoma        )
  Corporation,                            )
                                          )
              Plaintiff,                  )
vs.                                       )
                                          )
CHASCO CONSTRUCTORS, LTD., L.L.P.,        )
  a Texas limited partnership,            )
                                          )
              Defendant,                  )        Case No. CIV-08-199-D
vs.                                       )
                                          )
KIOWA CASINO OPERATIONS                   )
  AUTHORITY and LUNA GAMING               )
  RANDLETT, L.L.C.,                       )
                                          )
              Third-Party Defendants,     )
                                          )
and                                       )
                                          )
F. G. HAGGERTY COMPANY, INC.,             )
                                          )
              Intervenor.                 )

## ORDER

Before the Court is the renewed motion [Doc. No. 184] of Defendant Kiowa Casino

Operations Authority ("KCOA") to dismiss the claims against it for lack of subject matter

jurisdiction.  KCOA argues that the Court lacks subject matter jurisdiction because KCOA is entitled

to tribal sovereign immunity from liability on the claims asserted by Plaintiff because it is an

instrumentality of the Kiowa Indian Tribe of Oklahoma ("Tribe").[1]  Plaintiff timely responded to

the motion, and KCOA filed a reply.

---

[1]As discussed in the Order [Doc. No. 98] addressing KCOA's initial motion to dismiss, an assertion of tribal sovereign immunity is properly raised in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  *Miner Electric, Inc. v. Muscogee (Creek) Nation,* 505 F.3d 1007, 1009 (10th Cir. 2007).  Rule 12(b)(1) motions permit consideration of evidence beyond the pleadings.  *Paper, Allied-Industrial, Chemical and Energy Workers Intern. Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292-93 (10th Cir. 2005).

Background:

The current motion is the most recent development in KCOA's efforts to be dismissed based on its continuing assertion that it is entitled to tribal sovereign immunity. KCOA was added as a party to this action in a third-party claim asserted by Defendant Chasco Constructors, Ltd., L.L.P. ("Chasco"). Chasco was the contractor on a project to construct a gaming facility for the Kiowa Tribe in Cotton County, Oklahoma. Plaintiff Swanda Brothers, Inc. ("Swanda") was engaged by Chasco as one of several subcontractors on the project and, when Chasco failed to pay certain invoices for work performed by Swanda, this lawsuit was filed. Chasco later asserted a third-party claim against KCOA, alleging that KCOA improperly withheld payment to Chasco of amounts due and owing on the project, including those attributable to Swanda's work.

KCOA moved to dismiss the third-party claim, arguing the Court lacks subject matter jurisdiction because KCOA is entitled to tribal sovereign immunity. By Order of March 30, 2010 [Doc. No. 98], the Court granted KCOA's first motion to dismiss. As set forth in detail in the Order, the Court did so because the Kiowa Tribe's constitution requires approval by the Kiowa Indian Council ("KIC")[2] before a tribal entity or affiliate is authorized to enter into contracts. More specifically, KCOA argued that the KIC must authorize any waiver of tribal sovereign immunity in a contract. The Construction Agreement executed by Chasco and KCOA ("Construction Agreement") contains a provision in which KCOA "expressly and unequivocally grants to the Builder [Chasco] (and no other Person) an irrevocable limited waiver of its sovereign immunity from unconsented suit (and waives its right to assert sovereign immunity and any and all defenses based thereon)." Exhibit A to Construction Agreement, submitted as Exhibit 1 to Chasco's response to

_____

[2]The KIC consists of all members of the Kiowa tribe over the age of 18. Constitution and Bylaws of the Kiowa Indian Tribe ("Kiowa Constitution"), Article I, § 2. A copy of the Kiowa Constitution is submitted as Exhibit 2 to KCOA's current motion.

the motion.  In the Construction Agreement, KCOA also consents to participate in arbitration of disputes and submits to the jurisdiction of the federal or state courts in Oklahoma.  *Id.*

In its first motion to dismiss,  KCOA represented to the Court that the KIC never authorized KCOA to execute a contract containing a waiver of tribal sovereign immunity, and there was no evidence to the contrary.  The Court concluded that there was no valid waiver of tribal sovereign immunity, and granted the motion to dismiss.

However, after the remaining parties engaged in discovery, Chasco moved for reconsideration of the March 30 Order, arguing that new evidence, consisting of documents produced in discovery, reflected the KIC had authorized KCOA to enter into a construction contract containing a waiver of tribal immunity and consenting to federal and state court jurisdiction.

The Court heard oral argument on Chasco's motion.  Evidence was presented which referenced  a July 9, 2005 meeting at which the KIC considered a  ballot initiative authorizing KCOA to enter into financing and other agreements with regard to the construction of a gaming facility.  Because KCOA had previously represented to the Court that no election had taken place, the Court determined the new evidence warranted reopening the matter.  *See* January 25, 2011 Order [Doc. No. 141].  In the January 25, 2011 Order, the Court vacated its previous Order in which KCOA was dismissed.  The Court authorized the parties to engage in discovery limited to the issue of subject matter jurisdiction for a period of 90 days.  The Court also determined that, following the close of discovery, KCOA could renew its motion to dismiss if it continued to have a good faith belief that the evidence warranted the filing of a new motion.[3]  KCOA has now renewed its motion.

---

[3]During discovery, the Court granted Chasco's motion to compel KCOA to produce certain documents.  *See*  Order of November 2, 2011 [Doc. No. 167].  After KCOA notified Chasco that certain requested documents could not be located, Chasco  moved to impose sanctions against KCOA for spoliation of evidence, arguing that the only missing documents were those reflecting minutes of the meetings of (continued...)

The current motion and response:

In its current motion, KCOA concedes that documents produced in discovery reflect that, in approving a July 9, 2005 ballot initiative, the KIC authorized KCOA to waive tribal sovereign immunity in connection with contracts related to the construction and operation of the planned gaming facility. However, KCOA now argues that the ballot initiative did not authorize such a waiver with respect to the Chasco Construction Agreement. Instead, KCOA contends the authorization applied only to agreements to be executed by KCOA and the original general contractor, Klewin Gaming and Hospitality/Kiowa I, LLC ("Klewin"). According to KCOA, Klewin filed a bankruptcy proceeding before it began work on the casino project, and Klewin was replaced by Chasco as general contractor. KCOA argues that the July 9, 2005 approval by the KIC applied only to its agreement with Klewin and did not extend to Chasco when it later became the general contractor. Because no new ballot issue was submitted to the KIC prior to KCOA's execution of the Construction Agreement with Chasco on December 7, 2005, KCOA contends the waiver of immunity is unauthorized and invalid. KCOA also argues that, if there is a question regarding the validity of the waiver in the context of the Kiowa constitutional requirements that only the KIC can approve a waiver, the matter must be decided by a tribal court rather than in this forum.

In addition, KCOA argues that, if the waiver of immunity in the Construction Agreement is

---

[3](...continued)
KCOA's Board of Trustees and resolutions passed by KCOA during the time period relevant to this litigation. Chasco argued KCOA failed to preserve evidence relevant to the issues in this lawsuit, and it asked the Court to rule that KCOA's failure to do so creates an inference that the missing documents reflected evidence unfavorable to KCOA's immunity argument. In its Order [Doc. No. 179], the Court concluded that "the record is now sufficient to support a permissive inference that the documents which KCOA cannot locate would be harmful to the contention that KCOA's waiver of tribal immunity was not properly authorized." Order [Doc. No. 179] at p. 10. The Court declined, however, to impose sanctions. The Court also noted that, although KCOA had reinstated its motion to dismiss, the subsequent discovery issues had prevented the parties from fully briefing the motion, and the Court authorized supplemental briefing. KCOA then reinstated its motion, and the parties have now fully briefed the issues.

valid, it is limited only to KCOA's consent to submit to arbitration before the American Arbitration Association ("AAA"), as set forth in the dispute resolution provisions of the Construction Agreement. KCOA argues that, under those provisions, Chasco was required to first submit the parties' dispute to arbitration. According to KCOA, Chasco's filing of the third-party complaint in this case is not authorized by the Construction Agreement. Thus, KCOA seeks dismissal on this alternative basis.

In response, Chasco argues that the language of the authorization approved by the KIC in the July 9, 2005 ballot initiative is not limited to a specific contract with Klewin or any other party, and its language is sufficiently broad to apply to the Construction Agreement. Chasco further argues the evidence establishes that Chasco in fact initiated an AAA arbitration proceeding, and KCOA not only participated in the initial steps required by the AAA, but it also asserted a counterclaim against Chasco in the proceeding. Chasco argues that, by affirmatively seeking relief in the AAA proceedings, KCOA waived its right to raise an immunity defense. Finally, Chasco contends that this dispute does not involve the interpretation of the Kiowa Constitution, and seeking such interpretation in the tribal courts is unnecessary.

<u>Application:</u>

"It is well established that Indian tribes possess the common law immunity from suit traditionally enjoyed by sovereign powers." *Berrey v. Asarco, Inc*., 439 F. 3d 636, 643 (10th Cir.2006); *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc*., 523 U.S. 751, 754 (1998); *Puyallup Tribe, Inc. v. Dep't of Game of the State of Washington*, 433 U.S. 165, 172-73 (1977). Tribal sovereign immunity extends to subdivisions of the tribe, including tribal business and commercial enterprises. *Native American Distributing v. Seneca-Cayuga Tobacco Co.*, 546 F. 3d 1288, 1292 (10th Cir.2008). Absent congressional abrogation or an express waiver by an Indian

tribe, sovereign immunity deprives the federal courts of jurisdiction to entertain lawsuits against an Indian tribe, its subdivisions and business entities, as well as  its officials acting in their official capacities. *See Native American Distributing*, 546 F. 3d at 1293;  *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  Although an Indian tribe may waive its immunity, the waiver must be clear and unequivocal in order to be valid and enforceable.  *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001).

The Construction Agreement executed by Chasco and KCOA contains a provision in Part II entitled "Limited Waiver of Sovereign Immunity; Specific Consent to Jurisdiction; Exhaustion of Tribal Remedies."  In pertinent part, that portion of the Construction Agreement provides:

> [T]he Owner [KCOA] hereby expressly and unequivocally grants to the Builder [Chasco] (and no other Person) an irrevocable limited waiver of its sovereign immunity from unconsented suit (and waives its right to assert sovereign immunity and any and all defenses based thereon) and consents to judicial proceedings, including without limitation, suit in or before the forum listed in Section II.B., solely and exclusively to:
>
> (1) resolve any dispute, claim, question, controversy, action or disagreement between the Owner (KCOA) and the Builder [Chasco] that arises under this Agreement and/or the Contract Documents whether arising under law or in equity and whether arising during or after the expiration of this Agreement and/or the Contract Documents ("Claims");
>
> (2) to compel arbitration of a Claim under the Construction Arbitration Rules of the American Arbitration Association ("AAA");
>
> (3) to enforce (i) the arbitrators' decision with respect to arbitration of a claim under the commercial arbitration rules of the AAA or (ii) any related judgment or award of any applicable judicial body; and
>
> (4) for no other purpose whatsoever.

Construction Agreement, Chasco response Ex. 1.  The courts referenced in Part II B of the Dispute Resolution agreement include "the United States District Courts for Oklahoma."  *Id.*, p. 2.

As Chasco points out in its response to the current motion, agreeing to submit contractual disputes to arbitration constitutes a waiver of tribal sovereign immunity, as a tribe's express agreement to submit to arbitration is sufficient to constitute a valid waiver of sovereign immunity. *C & L Enterprises,* 532 U.S. 411 at 418-19.  The issues presented in *C & L* are essentially the same as those in this case: the Citizen Band tribe entered into a construction contract with C & L, and the contract contained a clause requiring "resolution of all contract-related disputes between C & L and the Tribe by binding arbitration; ensuing arbitral awards may be reduced to judgment 'in accordance with the applicable law in any court having jurisdiction thereof.'" *Id.* (quoting from the contract at issue).  The arbitration clause, like that in the Chasco Construction Agreement, provided that arbitration would be governed by the rules of the American Arbitration Association, and that the resulting award could be enforced in "any federal or state court having jurisdiction thereof."  *Id.* at 419.  The Court held that, based on the contract's language, "[W]e are satisfied that the Tribe in this case has waived, with the requisite clarity, immunity from the suit C & L brought to enforce its arbitration award."  *Id.* at 418.

Although KCOA acknowledges this general rule,  it argues that the rule does not apply because KCOA was never authorized to enter into the Construction Agreement containing the mandatory arbitration clause and effectively waiving tribal sovereign immunity.  According to KCOA, the KIC did not expressly approve the Chasco Construction Agreement, and the tribe's constitution requires such approval.

The Constitution and Bylaws of the Kiowa Indian Tribe ("Kiowa Constitution") establish the KIC as the governing body of the tribe, and expressly empower the Kiowa Business Committee ("KBC") to act on behalf of the Kiowa Tribe regarding specific business matters.   Kiowa Constitution, Article I, Section 2.  The Kiowa Constitution provides that all other powers not vested

in the KBC "shall be retained by the Kiowa Indian Council." *Id.,* Article V, Sections 1 and 2.  The

enumerated powers of the KBC do not include authorization to waive tribal sovereign immunity,

thus reserving that authority to the KIC.

The evidence now before the Court reflects that, on July 9, 2005, the KIC approved a ballot

initiative authorizing KCOA to enter into agreements related to the construction and operation of

a gaming facility.  The ballot initiative considered by the KIC presented the following question:

> Shall the Kiowa Indian Council affirm the authority of the KBC and the Kiowa
> Casino Operations Authority to enter into financing construction and other
> agreements for the purpose of constructing and operating a gaming facility, which
> agreements provide for any disputes to be resolved pursuant to binding arbitration
> enforceable in state and federal court.

Ballot Initiative A-05-02, Ex. 5 to KCOA motion.  The parties do not dispute that, on July 9, 2005,

the KIC voted in favor of this question, thereby authorizing the KBC and KCOA to enter into the

agreements required to construct and operate a gaming facility.  The election was certified by the

Kiowa Election Board.  Certification, Ex. 5 to KCOA motion.

KCOA argues, however,  that the authorization approved by the KIC does not apply to

Chasco, but extended only to KCOA's initial contract with Klewin.   Because the Construction

Agreement with Chasco was not identified in the ballot initiative, KCOA argues that it was never

properly authorized to execute the Construction Agreement, and the purported waiver of tribal

sovereign immunity cannot be enforced.

The Court is not persuaded by this argument.  There is no dispute that the Kiowa Tribe

intended to build a gaming facility and that, to do so, it was required to engage a contractor and take

other steps necessary to construct the facility and, upon completion, to operate it.   The language

of the ballot initiative approved by the KIC is broad, and it authorizes the KBC and KCOA to "enter

into financing construction and *other agreements for the purpose of constructing and operating a*

*gaming facility.*" Ballot Initiative A-05-02 (emphasis added). The ballot initiative did not identify

Klewin or any other potential party to any of the agreements that might be required for the purpose

of constructing and operating a gaming facility. Nor did it authorize only a single agreement, as it

expressly extends to "other agreements." It cannot reasonably be construed as authorizing KCOA

to execute only a contract with Klewin. To accept KCOA's current interpretation would require a

conclusion that the KIC was required to authorize each agreement or contract that might be required

throughout the duration of the construction and, ultimately, the operation of the facility. There is

no evidence that the KIC anticipated having to approve additional ballot initiatives for each step of

the construction and operation of the gaming facility.

The Court concludes that, considering all of the facts in evidence, the KIC authorized KCOA

to execute *all* agreements necessary to complete and operate the gaming facility, including but not

limited to the Chasco Construction Agreement. The Court further concludes that the KIC authorized

KCOA to submit to arbitration of any disputes arising under the agreements executed by KCOA,

including the Chasco Construction Agreement, and that the contractual language submitting disputes

to arbitration is a clear and unequivocal waiver of tribal sovereign immunity.

That KCOA was authorized to execute the Chasco Construction Agreement and waive

immunity is also supported by evidence showing  KCOA was created for the express purpose of

constructing and operating a gaming facility for the Kiowa Tribe, as set forth in the KCOA Second

Amended and Restated Charter ("KCOA Charter"). By its actions, the KBC granted to KCOA

authorization to execute documents and engage in action required to accomplish the goal of

constructing and operating a gaming facility. A copy of the KCOA Charter is contained in the record

as Exhibit 10 to Chasco's response to KCOA's previous motion to dismiss [Doc. No. 158]. The

KCOA Charter was adopted by the Kiowa Gaming Commission, effective April 22, 2005, and by the KBC on April 26, 2005. *See* Exhibit 9 to Doc. No. 158.

The KBC resolution approving the KCOA Charter recites that, in a 2004 resolution, the KCOA was established as a "commercial enterprise of the Tribe for the purposes of exclusively developing, constructing and operating the gaming, hospitality and resort operations of the Tribe." *Id.* The KBC 2005 resolution also expressly authorized the KCOA officers "to take such further action, and execute such further documents, necessary to effect the purposes of this resolution," and it granted "any additional approvals and consents necessary to accomplish these actions in an effort to promote the policy of the Tribe to achieve and sustain maximum Tribal revenue from gaming." *Id.* at p. 2.

The KBC approval of the KCOA Charter also reflects approval of the charter's specific language authorizing KCOA to exercise powers necessary to carry out its stated goal of completing and operating the gaming facility.  Among the express enumerated powers listed in the KCOA Charter are the power "to sue and be sued in its name, upon any contract, claim or obligation arising out of its activities under this Charter and *to agree by contract to waive the Authority's immunity from suit, but only to the extent expressly permitted by this Charter.*"  KCOA Charter, Article 10, Section 10.16 (emphasis added).  The limitation on the authority to waive immunity from suit is found in Article 5 of the KCOA Charter, which provides that KCOA "shall not have the power to pledge or encumber the assets of the Tribe" other than the property of KCOA. *Id.,* Article 5, Section 5.01.  The Chasco Construction Agreement satisfies this limitation, as it expressly provides that KCOA does not consent to enforcement of any judgment that would encumber the assets of the Kiowa Tribe other than the gaming assets, which are defined as the property of KCOA to be derived from its gaming operations.  Construction Agreement, KCOA Ex. 1.

The KCOA Charter also provides that KCOA's authority to sue or be sued and to waive its immunity from suit must be approved by a resolution adopted by KCOA's Board of Trustees. *Id.;* Article 4, Section 4.07 (a) and (b).  As Chasco points out, discovery conducted in this case has reflected that the minutes of the Board of Trustees meetings in November and December of 2005, when authorization to enter into the Chasco Construction Agreement was discussed and approved, were never located by KCOA or the Kiowa Tribe, although all other relevant Board minutes were located and produced.  The absence of these documents was the subject of Chasco's motion for sanctions and the Court's September 25, 2012 Order [Doc. No. 179] in which it found the record sufficient to support a permissive inference that the missing documents would be harmful to KCOA's contention that tribal sovereign immunity was not validly waived.  In addition,  as Chasco points out in its response brief, there is other evidence that the KCOA Board of Trustees approved the Construction Agreement.

The evidence reflects that KCOA sought review of the Chasco Construction Agreement by a law firm.  *See* KCOA motion, Ex. 1.  Although the resulting legal memorandum specifically identifies a request for a legal opinion regarding a financing agreement with Luna Gaming Randlett, LLC, it also refers in detail to KCOA's authority to execute other documents required to effectuate construction and operation of the gaming project. *Id.*  Additionally, the KCOA Board of Trustees minutes for a November 1, 2005 meeting reflect that the Board voted unanimously to approve the Chasco Construction Agreement, subject only to the pending review of that agreement by KCOA's legal counsel, Ryland Rivas.  *See* minutes, Exhibit 14 to Chasco's response [Doc. No. 158] to original motion to dismiss.  Furthermore, as Chasco points out, KCOA concedes in its current motion that Chasco proceeded with work "under a contract *approved by the board of the KCOA*." KCOA brief [Doc. No. 185] at p. 6 (emphasis added).

The Court concludes that, contrary to KCOA's current argument, it entered into the Construction Agreement containing a valid waiver of sovereign tribal immunity, and the evidence is sufficient to show that KCOA was properly authorized by a vote of the KIC to execute not only the Construction Agreement but all other agreements related to the construction and operating of the gaming facility.  Furthermore, the Court concludes that the necessary authorization to do so was approved by the KBC when it adopted the resolution approving the KCOA Charter.  Finally, the Court concludes the evidence establishes that the Construction Agreement was properly approved by KCOA's Board of Trustees.

However, KCOA also argues that, even if the authorization was valid, the Construction Agreement's execution by KCOA does not waive its tribal sovereign immunity from liability in this lawsuit because this action does not seek enforcement of an AAA arbitration award.  KCOA contends that, because the express terms of the Construction Agreement require submission to arbitration, the waiver resulting therefrom does not apply to this proceeding.

In response, Chasco submits evidence regarding its efforts to resolve this dispute through arbitration, including evidence that KCOA actively participated in the initial stages of the arbitration procedure.  The evidence establishes that, when the dispute regarding payment for work performed on the gaming facility arose, Chasco initiated the procedure for arbitration before the AAA, as required by the Construction Agreement, asserting a claim for $3 million in unpaid invoices.  *See* Chasco response, Ex. 1, p. 1.  Chasco paid the $8,000.00 filing fee required to initiate the procedure, and its demand for arbitration was submitted to Ryland Rivas, counsel for the KCOA.  *Id.*, pp. 1-2. The evidence also shows that  KCOA not only responded to the arbitration demand, but it also sought affirmative relief by filing a counterclaim in which it sought $2.5 million in damages for

losses on the project as a result of Chasco's allegedly deficient performance of its obligations under the Construction Agreement.  Chasco response, Ex. 2, pp. 2-3.

On February 26, 2008, Swanda filed the instant lawsuit against Chasco, seeking payment for unpaid invoices representing work it performed on the gaming facility project in its role as a subcontractor.  On May 6, 2008, Chasco filed its demand for arbitration with the AAA, asserting its claims against KCOA.  Chasco response, Ex. 1, p. 2.  KCOA's counterclaim in arbitration was filed on May 30, 2008.  Chasco response, Ex. 2, pp. 2-3.

Chasco did not seek to assert its third-party claim against KCOA in this lawsuit until it filed a motion to do so on December 16, 2008, well after it initiated the AAA arbitration proceeding, and KCOA asserted its counterclaim in arbitration.  In the interim, however, Chasco and KCOA notified the AAA that they had agreed to hold the arbitration proceeding in abeyance.  Chasco response, Ex. 3, p. 1.  They so notified the AAA on July 14, 2008, and the AAA acknowledged that agreement and confirmed the arbitration would be held in abeyance.  *Id.*  The record reflects that this occurred prior to the parties' selection of arbitrators.  *Id.*, Ex. 3, p. 2.

The evidence reflects that, contrary to KCOA's apparent contention, Chasco did not seek to avoid the arbitration required by the Construction Agreement by filing its third-party claim against KCOA.  In fact, it initiated arbitration after Swanda filed this action.  Furthermore, Chasco did not seek to add KCOA as a party to this lawsuit until almost one year after it was filed.  In the interim, KCOA participated in the initial stages of the AAA arbitration.  There is no evidence in the record that KCOA contested the propriety of arbitration or asserted any claim that tribal sovereign immunity precluded its participation in arbitration.  In fact, KCOA affirmatively sought relief through arbitration by asserting a counterclaim against Chasco in that proceeding.  Where a party otherwise entitled to immunity from liability seeks affirmative relief in a proceeding, the party  has

waived its immunity claim as to the relief it requests.  *See, e.g., Berrey v. Asarco, Inc.*, 439 F.3d 636, 643 (10th Cir. 2006).

The Court finds that the evidence does not support KCOA's contention that Chasco was required to  complete the AAA arbitration before asserting its third-party claim against KCOA in this lawsuit, particularly in light of the fact that KCOA agreed to hold the arbitration in abeyance after the initiation of this lawsuit.

KCOA also argues that this Court should abstain from deciding the claims against KCOA and require the parties to exhaust remedies available through the tribal courts.  More specifically, KCOA argues  the Kiowa tribal courts should have the opportunity to rule on "undecided constitutional issues relating to the authority of the KIC to delegate its powers to the KCOA." Motion at p. 14.  In response, Chasco discusses the tribal exhaustion rule and the factors to be considered in its application, citing *Pittsburg & Midway Coal Mining Co. v. Watchman*, 55 F.3d 1531, 1536 (10th Cir. 1995), *abrogated on other grounds by Alaska v. Native Village of Venetie Tribal Gov't,* 522 U.S. 520 (1998).

The Court concludes that the tribal exhaustion rule is inapplicable here.  "The tribal exhaustion rule provides that, absent exceptional circumstances, federal courts typically 'should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review are exhausted.'" *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1149 (10th Cir. 2011) (quoting *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1170 (10th Cir. 1992)).   In this case,  the Court finds no reason to apply the tribal exhaustion rule analysis because there is no challenge to tribal court jurisdiction.

14

Instead, KCOA asks this Court to decline or abstain from considering the dispute between Chasco and KCOA until the a tribal court[4] can consider what KCOA argues is a matter requiring interpretation of the Kiowa Constitution.   In support of this contention, it argues that the Kiowa Constitution does not mention the KCOA and does not authorize the KBC to delegate its powers to conduct business to new entities that are created and are not identified in the Kiowa Constitution. KCOA also argues that the KIC's approval of the ballot initiative allowing KCOA to consent to the jurisdiction of federal or state courts presents a constitutional question involving whether the KIC could lawfully delegate the power to waive immunity and consent to jurisdiction.

As Chasco points out in its response, the Kiowa Constitution confers broad authority upon the KIC to delegate to the KBC duties necessary to conducting the business enterprises of the Kiowa Tribe.  KCOA identifies no provision of the Kiowa Constitution which prohibits or restricts the KBC from delegating specific responsibilities to entities created for express purposes.   It cannot reasonably be questioned that the Kiowa Tribe desired to construct and operate a gaming facility for the benefit of the Tribe.   Nor can it reasonably be argued that the KIC was not aware of this goal. The evidence before the Court demonstrates that the KBC and the KIC reasonably understood that achievement of that goal would require significant effort and numerous business agreements requiring specific expertise.   The KBC apparently recognized that the day-to-day activities required to construct and operate a gaming facility should be the responsibility of an organized entity charged only with that responsibility, and the KCOA was created for that purpose.   It is also apparent from the evidence that the KIC recognized that delegating to the KCOA certain responsibilities was necessary to effectively pursue its goal of completing a gaming facility  and, more specifically, that

---

[4]KCOA acknowledges that the Kiowa Tribe does not have its own court system.  Instead, tribal court matters are adjudicated by courts provided by the Bureau of Indian Affairs, including the Court of Indian Offenses and the Court of Indian Appeals. *See* KCOA motion at p. 8 n. 4.

authorizing the KCOA to execute agreements to accomplish the goal was a business necessity. The broad authorization granted by the KIC reflects that understanding.

Conclusion:

The Court finds that, based on the evidence before it in light of the governing law, KCOA was duly authorized by the KIC to execute agreements, including the Chasco Construction Agreement, necessary to construct and operate the gaming facility. The Court further finds that the KIC validly authorized KCOA to consent to jurisdiction in the state and federal courts, and to thereby waive tribal sovereign immunity, by authorizing it to execute agreements containing mandatory arbitration clauses and/or agreements to consent to federal and state court jurisdiction. The Court finds that, in executing the Chasco Construction Agreement, KCOA validly waived tribal sovereign immunity. Accordingly, the renewed motion to dismiss [Doc. No. 184] is DENIED.

IT IS SO ORDERED this 26th day of August, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE